UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Christopher Nazario | : |
| Plaintiff, | : No. 3:21-cv-216-VLB |
| v. | : |
| Nicole Thibeault, | : March 4, 2022 |
| Defendant. | : |

## MEMORANDUM OF DECISION

On February 22, 2021, Plaintiff Christopher Nazario, previously incarcerated at Osborn Correctional Institution ("Osborn"), filed this action pursuant to 42 U.S.C. § 1983 against Defendant Nicole Thibeault, Deputy Warden at Osborn during the relevant events, for damages in her individual capacity. (Compl. ¶¶ 1–2, 4–5, Dkt. 1.) Plaintiff asserts two claims. First, he alleges Defendant forced him to transfer to a different housing unit at Osborn, where Defendant knowingly exposed Plaintiff to individuals in the unit who had COVID-19 or exhibited symptoms of the virus. (*Id.* ¶ 1.) Second, Plaintiff alleges that Defendant "forced him to work as a laundry worker without personal protective equipment," putting him at further risk of contracting COVID-19. (*Id.* ¶¶ 1, 55.) Plaintiff asserts that Defendant's conduct constitutes deliberate indifference to Plaintiff's health and safety in violation of his Eighth Amendment rights under the U.S. Constitution. (*Id.* ¶¶ 53–55, 57.)

Before the Court is Plaintiff's motion to amend his complaint to add parties or, in the alternative, to consolidate matters for trial, filed on September 29, 2021, nearly four months after the Court's June 1, 2021 deadline to amend the complaint.

1

(*See* Scheduling Order, Dkt. 15.)  Plaintiff requests leave to amend the complaint to add eight plaintiffs, all of whom were his fellow laundry workers at Osborn, and five defendants, who were officials at Osborn during the events at issue.  (Mot. 1, Dkt. 18.)  Defendant opposes amendment on the grounds that Plaintiff has failed to establish good cause and that granting leave to amend at this late stage of the proceeding would prejudice Defendant.  (Resp. 4, Dkt. 20.)  Alternatively, Plaintiff seeks to consolidate this action with seven civil actions brought by other laundry workers at Osborn.  (*See* Mot. 2.)  Defendant opposes consolidation for all purposes except for summary judgment.  (Resp. 1.)  According to Defendant, consolidating these cases, which involve different parties, claims, and requests for relief, would confuse a jury and result in the "misadministration of justice."  (*Id.* 10.)

For the following reasons, the Court denies both Plaintiff's motion to amend and Plaintiff's motion to consolidate.

## I.  BACKGROUND

Plaintiff states that he was incarcerated at Osborn for over seventeen years and was released on September 23, 2020.  (Compl. ¶¶ 4, 7.)  For two to three years during his incarceration, Plaintiff was a laundry worker at Osborn.  (*Id.* ¶ 10.)  In March 2020, in response to the COVID-19 pandemic, Osborn officials shut down many of the prison's programs and work activities, allowing only essential work such as "kitchen work, medical, clothing factory work, and laundry."  (*Id.* ¶ 13.)  Plaintiff and the other laundry workers were told to continue working during March

2

to April 2020, allegedly without being provided any personal protective equipment except for cloth masks.  (*Id.* ¶¶ 14–16.)

In March 2020, Plaintiff lived in a housing unit called H-Block with most of the other laundry workers, where he claims that he had a "single cell" with no cellmate.  (*Id.* ¶ 12.)  On April 3, 2020, Defendant and Captain Perez, the Unit Manager, spoke with the laundry workers in the mess hall and informed them that they would be transferred from H-Block to E-Block.  (*Id.* ¶¶ 18–19.)  Several of the laundry workers, including Plaintiff, objected to the transfer.  (*Id.* ¶ 20.)  They informed Defendant that, compared to H-Block, E-Block was a less safe housing option during a COVID-19 outbreak.  (*Id.* ¶ 21.)  Unlike H-Block, the cells in E-Block had bars instead of doors and were therefore open to the housing unit's common areas.  (*Id.* ¶ 27.)  The laundry workers also allegedly told Defendant that, because people from other prisons were being transferred to E-Block for quarantine, those housed in E-Block were "highly likely to have COVID."  (*Id.* ¶¶ 18–19.)  Plaintiff alleges that Defendant told the laundry workers that if they "refused to transfer to E-Block, they would (1) lose their jobs as laundry workers, (2) get a 'ticket' for 'refusing housing,' and (3) . . . lose their single cell[s] and get cellmates."  (*Id.* ¶ 24.)

The laundry workers ended up moving to the top tier of a two-tier housing dormitory in E-Block.  (*Id.* ¶ 26.)  Plaintiff states that, upon arrival to E-Block, he heard people who allegedly had COVID-19 "coughing constantly" on the bottom tier.  (*Id.* ¶ 28.)  Plaintiff claims that, although some prisoners who exhibited symptoms of COVID-19 were transferred from E-Block to medical segregation units in F-Block, many prisoners living in E-Block continued to show symptoms of

3

COVID-19.  (*Id.* ¶ 29.)  In addition, Plaintiff alleges that individuals who had been exposed to COVID-19 were transferred to the top tier of E-Block, where they "were kept in close quarters" with Plaintiff and the other laundry workers.  (*Id.* ¶¶ 30–31.)

While living in E-Block, Plaintiff contracted COVID-19.  (*Id.* ¶ 32.)  On April 29, 2020, after discovering that Plaintiff had a fever, Osborn staff transferred him to F-Block.  (*Id.* ¶ 33.)  Plaintiff states that, one day later, he was transferred to Northern Correctional Institution ("Northern"), where his condition deteriorated and he was put on a breathing machine.  (*Id.* ¶¶ 34–35.)  Plaintiff further alleges that, on his first day at Northern, he was transferred to UCONN Medical Center, where his condition "continued to deteriorate."  (*Id.* ¶¶ 36–37.)  He remained there for a week as he recovered from COVID-19 and was then transferred back to Northern, where he allegedly experienced "after-effects of COVID-19," including damage to his heart and circulatory system.  (*Id*. ¶¶ 38–41.)  Plaintiff reports that he had a heart attack at Northern on May 13, 2020.  (*Id.* ¶ 42.)  Paramedics transported Plaintiff to the ICU at Hartford Hospital, where he underwent multiple stent procedures.  (*Id.* ¶¶ 43–44.)  At the hospital, Plaintiff's heart stopped twice, and hospital staff revived him both times.  (Id. ¶ 45.)  Plaintiff states that, due to his heart attack, he had a pacemaker implanted in his chest.  (*Id.* ¶ 46.)  He was transferred from Hartford Hospital to an infirmary unit at Osborn on May 21, 2020 and was transferred back to H-Block on June 19, 2020.  (*Id.* ¶¶ 47–48.)

Plaintiff alleges that "[n]early every laundry worker who was transferred from H-Block to E-Block [also] contracted COVID-19."  (*Id.* ¶ 49.)  Plaintiff's amended complaint would add eight of those laundry workers as plaintiffs and five Osborn

officials as defendants. Although the single claim of Eighth Amendment deliberate indifference would remain the same, the amended complaint would add several new factual allegations, including:

1. Some plaintiffs requested PPE and were told by Osborn staff that it was unavailable. (Am. Compl. ¶¶ 23–24, 48, Dkt. 18.)

2. A laundry worker who is not a party to this lawsuit, Frederick Gallman, passed away due to COVID-19 in late April 2020. (*Id.* ¶ 49.)

3. Defendant told the laundry workers that everything was "under control" and that Osborn staff had "cleaned everything to make it spick and span." (*Id.* ¶ 33.) However, the cells in E-Block were "filthy." (*Id.* ¶ 40.)

4. The cells in H-Block had steel doors, "four solid walls," and windows that gave the plaintiffs access to fresh air, while the cells in E-Block had no windows and no ventilation. (*Id.* ¶ 38.)

5. If the plaintiffs did not transfer to E-Block, they would be placed in solitary confinement. (*Id.*)

6. Osborn staff members Stross and McCulah did not wear masks when kitchen workers living on the bottom tier of E-Block had COVID-19. (*Id.* ¶ 47.)

7. On May 7, 2020, nine of ten laundry workers tested positive for COVID-19. (*Id.* ¶ 53.) Two of the proposed plaintiffs, Hackett and Lee, had symptoms. (*Id.*) The laundry workers, besides Plaintiff, were transferred to the hospital at Osborn for the night and to Northern the next evening, where they spent twelve days in quarantine. (*Id.* ¶¶ 66, 67.) The laundry workers were not allowed to take any showers during this twelve-day quarantine. (*Id.* ¶ 67.)

8.   On May 21, 2020, other inmates doing laundry work were observed wearing N95 masks, shields, and Tyvek suits, which the plaintiffs were also provided with when they returned to work on June 1, 2020.  (*Id.* ¶¶ 68, 70.)

In Spring 2021, seven of the proposed plaintiffs filed pro se civil actions within this District including: (1) *Browne v. Rodriguez*, 3:21-cv-00329-VAB; (2) *Hackett v. Cook*, 3:21-cv-00328-VLB; (3) *Galarza v. Rodriguez*, 3:21-cv-00398-AVC; (4) *Wade v. Cook*, 3:21-cv-00374-AVC; (5) *Brown v. Cook*, 3:21-cv-00575-AVC; (6) *Lee v. Cook*, 3:21-cv-00399-KAD; and (7) *Guess v. Cook*, 3:21-cv-00404-VAB.  (Mot. 2, Dkt. 18.)  Counsel for Plaintiff, Attorney Alexander Taubes, states that "all of the proposed plaintiffs are now represented by the same counsel."  (Mot. 1.)

Between May and July 2021, three of the actions were dismissed without prejudice either for failure to pay the filing fee or for failure to submit the necessary documentation to proceed *in forma pauperis*.  See *Galarza v. Rodriguez*, 3:21-cv-00398-AVC (D. Conn.), Dkt. 7; *Brown v. Cook*, 3:21-cv-00575-AVC (D. Conn), Dkt. 7; *Guess v. Cook*, 3:21-cv-00404-VAB (D. Conn.), Dkt. 8.

The plaintiffs in the actions that remain pending—Browne, Hackett, Wade, and Lee—each claim that they contracted COVID-19 at Osborn and that their symptoms included headaches, vomiting, hot flashes, cold flashes, weakness, and coughing.[1]  *Browne v. Rodriguez*, 3:21-cv-00329-VAB (D. Conn.), Dkt. 1, ¶ 30;

---

[1] When the complaints are considered together, inconsistencies in factual allegations arise.  Each plaintiff states that only two out of the nine laundry workers who tested positive for COVID-19 on May 7, 2020 were symptomatic.  The two symptomatic laundry workers are identified in both Browne and Hackett's complaints as "plaintiff and Lee."  *Browne*, 3:21-cv-00329-VAB (D. Conn.), Dkt. 1, ¶ 39; *Hackett*, 3:21-cv-00328-VLB (D. Conn.), Dkt. 1, ¶ 39.  However, each complaint suggests that Browne, Hackett, Wade, and Lee were all symptomatic.

6

*Hackett v. Cook*, 3:21-cv-00328-VLB (D. Conn.), Dkt. 1, ¶ 30; *Wade v. Cook*, 3:21-cv-00374-AVC (D. Conn.), Dkt. 1, ¶ 30; *Lee v. Cook*, 3:21-cv-00399-KAD (D. Conn.), Dkt. 1, ¶ 30.  Hackett alleges that he developed a hernia due to coughing, and Wade states that he had endocarditis—however, it is unclear if these conditions predated their infections with COVID-19.  *Hackett*, 3:21-cv-00328-VLB (D. Conn.), Dkt. 1, ¶ 45; *Wade*, 3:21-cv-00374-AVC (D. Conn.), Dkt. 1, ¶ 45.

Initial review orders have been issued in Browne, Hackett, and Lee's cases.  *See Browne*, 3:21-cv-00329-VAB (D. Conn.), Dkt. 11; *Hackett*, 3:21-cv-00328-VLB (D. Conn.), Dkt. 8; *Lee*, 3:21-cv-00399-KAD (D. Conn.), Dkt. 8.  Only the claims of Eighth Amendment deliberate indifference and the requests for immediate vaccination and damages in defendants' individual capacities proceeded beyond initial review.  *Hackett*, 3:21-cv-00328-VLB (D. Conn.), Dkt. 8, 23–24; *Browne*, 3:21-cv-00329-VAB (D. Conn.), Dkt. 11, 21; *Lee*, 3:21-cv-00399-KAD (D. Conn.), Dkt. 8, 18.  Specifically, the Court allowed each plaintiff's claims of deliberate indifference to proceed against certain defendants based on (1) the defendants' failure to protect the plaintiff from exposure to COVID-19, including failures to provide adequate PPE, to separate inmates known to have been exposed to COVID-19, and to enforce mask wearing and social distancing; (2) unsanitary conditions and inadequate ventilation in the cells in E-Block; and (3) a lack of access to a shower during a twenty-one-day quarantine.  *Browne*, 3:21-cv-00329-VAB (D. Conn.), Dkt. 11, 9–11, 13; *Hackett*,

---

*Browne*, 3:21-cv-00329-VAB (D. Conn.), Dkt. 1, ¶ 29–30; *Hackett*, 3:21-cv-00328-VLB (D. Conn.), Dkt. 1, ¶ 29–30; *Wade*, 3:21-cv-00374-AVC (D. Conn.), Dkt. 1, ¶ 29–30; *Lee*, 3:21-cv-00399-KAD (D. Conn.), Dkt. 1, ¶ 29–30.  Thus, the true extent or severity of each proposed plaintiff's symptoms is unclear.

3:21-cv-00328-VLB (D. Conn.), Dkt. 8, 9–14; *Lee*, 3:21-cv-00399-KAD (D. Conn.), Dkt. 8, 8–12.

## II.  MOTION TO AMEND

Plaintiff seeks to amend the complaint to add eight plaintiffs, five defendants, and several factual allegations.  Defendant opposes.

### A.  Legal Standard

"The court should freely give leave" for a party to amend its pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, leave to amend may be properly denied for: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981)).  "Amendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'"  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

"[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the

8

scheduling order where the moving party has failed to establish good cause" in accordance with Federal Rule of Civil Procedure 16(b). *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "Good cause" depends on the moving party's diligence. *Parker*, 204 F.3d at 340. For instance, a moving party may fail to establish good cause if "the information supporting the proposed amendment to the complaint was available to [the moving party] even before she filed suit," *id.* at 341 (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)), or the proposed amendment is based on information "that the party knew, or should have known, in advance of the deadline," *Leary v. Manstan*, No. 3:13-CV-00639, 2015 WL 521497, at *3 (D. Conn. Feb. 9, 2015) (quoting *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014)). "The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay . . . ." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).

Although the moving party's diligence is the primary consideration in deciding whether to modify a scheduling order to allow an amended complaint under Rule 16(b), the Court "may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Courts have often concluded that amendment would prejudice the non-moving party where discovery had closed and/or a dispositive motion had been filed. *See Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (affirming the lower court's denial of the plaintiffs' motion to amend because,

9

"when the motion was filed, discovery had been completed and a summary judgment motion was pending"); *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (holding that the district court acted within its discretion in denying a motion to amend where the case "was near resolution and discovery had been completed").

Thus, the Court has discretion "to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell*, 922 F.2d at 72.

B. Discussion

Plaintiff argues that, although he filed this motion to amend after the Court's deadline for amendment, he has nonetheless been diligent in investigating the case and preparing this motion. (Mot. 7) Plaintiff located eight of his fellow laundry workers, who are incarcerated, despite having a lack of financial resources, having limited contact with counsel, and not remembering their exact names. (*Id.*) In addition, Plaintiff states that amendment would not prejudice Defendant because a single action would reduce the burdens of discovery and trial, amendment will not significantly alter discovery or the trial of this matter "because the underlying events and conduct at issue will remain the same," and all the claims are within the statute of limitations. (Mot. 6.)

Defendant opposes amendment because Plaintiff failed to explain his delay in adding the proposed parties when the other plaintiffs' actions were filed within several weeks of each other and Plaintiff knew at the time of filing this action who both his fellow laundry workers and the additional defendants were. (Resp. 5.)

10

Defendant also asserts that adding eight plaintiffs, five defendants, and forty-eight claims after the close of discovery will prejudice her and the proposed defendants. (Resp. 4.) Defendant argues that reopening discovery to accommodate the new defendants would significantly delay the resolution of this matter. (Resp. 5.)

The Court agrees with Defendant that Plaintiff unduly delayed in seeking to amend the complaint. The reasons that Plaintiff provides for not including the proposed plaintiffs earlier in the action are unpersuasive. It is unreasonable that Plaintiff would not have known the names of his fellow laundry workers either at the time of filing or at least prior to the deadline to amend his complaint. In addition to working the same job as the proposed plaintiffs, Plaintiff lived in the same housing unit with most of the other laundry workers, and he and the other laundry workers were transferred together to the same tier of another housing unit. Also, Plaintiff claims that Defendant told the laundry workers collectively in the mess hall that they were going to be transferred to E-Block. Thus, it seems unlikely that Plaintiff and his fellow laundry workers never assembled as a group at some point during their incarceration. On the contrary, Plaintiff seems to have had ample opportunity to get to know who at least some of his fellow laundry workers were.

Even if Plaintiff did not know the names of his fellow laundry workers, he at least knew at the time he filed this action that many of them potentially had claims against Osborn staff arising from the same events that he alleges here. Plaintiff stated in his complaint filed in February 2021 that he "was not the only laundry worker to contract COVID-19 due to the Defendant's actions" and "[n]early every laundry worker who was transferred from H-Block to E-Block contracted COVID-

19." (Compl. ¶ 49.) Therefore, Plaintiff should have known that it was likely that the other laundry workers would also file lawsuits. With this knowledge, counsel for Plaintiff could have used PACER to discover the names of the additional plaintiffs by way of the actions that they filed in March and April 2021, only one and two months after Plaintiff filed his own action and well before the Court's June 1, 2021 deadline to amend.

Alternatively, counsel for Plaintiff could have filed this action with additional plaintiffs listed as John Does or issued an interrogatory during the discovery period to determine the names of the proposed plaintiffs. Plaintiff also could have used discovery to reveal the roles of the proposed defendants and their participation in the alleged harm. Thus, Plaintiff does not provide a sufficient explanation for failing to include the proposed defendants at an earlier point in this action. Allowing leave to amend may have been warranted if, during discovery, Plaintiff had asked Defendant for the names of the proposed plaintiffs and defendants, and Defendant had refused to disclose this information. However, this is not what Plaintiff alleges occurred here.

Plaintiff was also not diligent in seeking leave to amend the complaint to add new factual allegations. At the time of filing this action, Plaintiff knew or should have known the facts that he seeks to add that are relevant to his own case.[2]

---

[2] For example, Plaintiff seeks to add an allegation that the cells in E-Block were "filthy" despite Defendant's assertion that Osborn staff had "cleaned everything," and another allegation that he and the proposed plaintiffs would be placed in solitary confinement if they refused to transfer to E-Block. (Am. Compl. ¶¶ 33, 40 38.)

**12**

**Lastly, the Court agrees with Defendant that granting Plaintiff's motion to amend would be prejudicial to Defendant. Contrary to Defendant's argument, delay itself is not prejudice—a time delay can be cured. However, as Defendant points out, reopening discovery would significantly delay the resolution of this matter. When Plaintiff filed this motion, discovery had virtually closed, and the deadline for filing dispositive motions was about a month away. Therefore, as in *Grochowski* and *Krumme*, allowing leave to amend at this late stage of the proceeding would prejudice Defendant.**

**Therefore, the Court denies Plaintiff's motion to amend because Plaintiff failed to establish good cause and allowing amendment would unduly prejudice Defendant.**

### III.  MOTION TO CONSOLIDATE

**Plaintiff seeks to consolidate this matter with seven civil actions brought by other laundry workers at Osborn. Defendant opposes consolidation for all purposes except for summary judgment.**

**A.  Legal Standard**

**The Court may consolidate actions that "involve a common question of law or fact . . . ." FRCP 42(a). The party moving for consolidation "bear[s] the burden of showing the commonality of factual and legal issues in different actions, and a district court must examine 'the special underlying facts' with 'close attention' before ordering a consolidation."** *In re Repetitive Stress Inj. Litig.*, 11 F.3d 368, 373 (2d Cir. 1993), *on reh'g*, 35 F.3d 637 (2d Cir. 1994) (quoting *Katz v. Realty Equities Corp.*, 521 F.2d 1354, 1361 (2d Cir. 1975)).

The Court may consolidate actions for trial "to avoid unnecessary costs or delay," *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990), or to "expedite trial and eliminate unnecessary repetition and confusion," *Devlin v. Transp. Commc'ns. Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (quoting *Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984)).  "[C]onsiderations of judicial economy favor consolidation."  *Johnson*, 899 F.2d at 1285.  However, "efficiency cannot be permitted to prevail at the expense of justice . . . ."  *Devlin*, 175 F.3d at 130.

"The trial court has broad discretion to determine whether consolidation is appropriate."  *Johnson*, 899 F.2d at 1284.

> When exercising its discretion, the court must consider: 'Whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.'

*Id.* at 1285 (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).

Due to concerns about prejudice to the defendant, denying consolidation because of disparities in plaintiffs' injuries is not unfamiliar in other types of cases within this circuit, such as mass tort cases.  See, e.g., *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 351 (2d Cir. 1993); *Baker v. Waterman S. S. Corp.*, 11 F.R.D. 440, 440–41 (S.D.N.Y. 1951); *In re N.Y. Asbestos Litig.*, 145 F.R.D. 644, 655 (S.D.N.Y. 1993), *aff'd sub nom. Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003 (2d Cir. 1995), *vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996).

14

In *Malcolm*, the court reversed the consolidation of forty-eight cases involving victims of asbestos exposure. 995 F.2d at 348, 354. Some of the plaintiffs suffered from asbestosis, some from lung cancer, and some from mesothelioma. *Id.* at 351. The court noted that "[t]he opportunity for prejudice is particularly troubling where, as here, asbestosis sufferers, who may under certain circumstances expect close to a normal life spans, are paired for trial with those suffering from terminal cancers, such as mesothelioma and lung cancer." *Id.*

Similarly, in *Baker*, the court found that consolidation may have prejudiced the defendants where two actions arising from an explosion, although sharing common questions of law and fact, involved differences in "[t]he nature and extent of the injuries sustained" by each plaintiff. 11 F.R.D. at 440–41. The court explained:

> No matter how carefully a jury were instructed as to separate consideration of the damages of each plaintiff, there is a chance that the jury after listening to evidence as to pain, suffering and injury of the two plaintiffs may be influenced, subconsciously perhaps, by the more serious injuries of one plaintiff in reaching its verdict in the case of the other.

*Id.*

In addition, when only one plaintiff has a certain injury requiring specific medical evidence, that evidence "is likely to be irrelevant (and possibly prejudicial) to the other cases sought to be consolidated." *In re N.Y. Asbestos Litig.*, 145 F.R.D. at 655. In *In re New York Asbestos Litigation*, the court severed a case involving a plaintiff with gastric cancer from other consolidated asbestos cases involving plaintiffs with lung-related cancers, because "[e]vidences of proof for cancer at

15

sites other than those in the lung or related to the lungs [would] differ from evidences of proof for the diseases in the other cases." *Id.*

Consolidation is also inappropriate where the plaintiff seeks to consolidate closed actions with actions that are still pending before the court. Closed actions "[are] no longer pending 'before the court'" as required by Rule 42(a). *Curtiss v. United States*, 778 F. App'x 56, 57 (2d Cir. 2019) (citing Fed. R. Civ. Pro. 42(a); *Devlin*, 175 F.3d at 130 (citing previous version of Rule 42, which applied only to actions "pending before the court")).[3]

B. Discussion

Plaintiff argues that his claims and those of the proposed plaintiffs are "essentially identical except for exhaustion and damages." (Mot. 5.) He and the proposed plaintiffs were all laundry workers at Osborn, and each plaintiff's claims are "based on the same alleged conduct of the same officials at Osborn during the same time period resulting in the same conditions." (*Id.* 3.) Moreover, Plaintiff asserts that consolidation will benefit judicial economy because, without consolidation, there will be up to eight separate trials of the same claim over the next two to three years.[4] (*Id.* 6.) In addition, Plaintiff states that consolidation will prevent inconsistent adjudication of the claims and "ensure that the claims are

---

[3] Although this case cites to the previous version of Rule 42, the principle that closed cases cannot be consolidated remains appropriate, particularly where, as here, there are other factors present that warrant consolidation.
[4] Although Plaintiff combines his arguments for amendment and consolidation, the Court will consider his arguments only as they relate to the appropriate legal standard for each issue.

16

resolved on their merit." (*Id.* 6.) Lastly, Plaintiff argues that consolidation would not unfairly prejudice the defendants.[5]

Defendant objects to consolidation of the three dismissed actions and to consolidation for all purposes including trial, except for the purpose of summary judgment. (Resp. 1.) According to Defendant, the pending actions should not be consolidated for trial because there are different defendants, claims, and relief sought in each action. (*Id.* 10.) In addition, Defendant argues that consolidation poses risks of jury confusion and "misadministration of justice" because it would be confusing for a jury "to decipher which claims are brought by which Plaintiffs against which Defendants, and which defenses are applicable." (*Id.*) However, Defendant does not object to consolidation for the purpose of summary judgment because Defendant asserts that "the Court will easily and competently" be able to distinguish between the claims on summary judgment. (*Id.* 9–10.)

The Court agrees with Defendant that consolidation of the dismissed actions is not appropriate. Dismissed cases are no longer "before the court" as required by Rule 42(a). Furthermore, consolidating the dismissed actions with the present matter would allow the plaintiffs from the dismissed cases to evade the Court's filing fee. If the statute of limitations has not run on the claims alleged in the dismissed actions, the plaintiffs could re-file those actions, but they would have to either pay the filing fee or, if they cannot afford the filing fee, provide the Court with

---

[5] The Court will consider here the same prejudice arguments that Plaintiff provided for amendment.

the necessary information to proceed *in forma pauperis*. Regardless, those actions would not be consolidated with the present case for the reasons discussed below.

As to the remaining actions that are currently pending before the Court, Plaintiff has not met his burden of establishing that they raise sufficiently common questions of law or fact. Although all plaintiffs allege deliberate indifference based on similar conduct by Osborn staff, the plaintiffs were each affected by that conduct in vastly different ways, giving rise to significant legal or factual issues in some cases that are absent in others. For instance, the issue of whether Plaintiff Nazario had a pre-existing heart condition raises complexities within discovery, the determination of damages, and the liability analysis that would not be present in the cases of the plaintiffs who had no pre-existing conditions and a mild course of COVID-19. The same is true for the issue of whether proposed plaintiff Wade's endocarditis was a pre-existing condition or was caused by his infection with COVID-19. Considering these significant differences, consolidating the actions into one would require a separate trial on causation and damages for each plaintiff, with different evidence, witnesses, and defenses presented in each case. Accordingly, consolidation of these actions would not promote judicial economy.

Consolidation would also prejudice the defendants—not because of the time involved in defending the action but because of the spectrum of damages alleged. Plaintiff Nazario alleges that he was on a breathing machine and suffered a heart attack, and that his heart stopped twice. He later had a pacemaker implanted in his chest and underwent multiple stent procedures. In comparison, the other plaintiffs' alleged symptoms and complications, if any, appear to have been mild. Including

these plaintiffs in one action, and thereby allowing the jury to view side-by-side the medical evidence of the varying degrees of plaintiffs' suffering, would be highly prejudicial to the defendants. The jury's sensitivity would likely be heightened by the dramatic effect that COVID-19 allegedly had on Plaintiff Nazario, making the jury more likely to award greater damages to the plaintiffs who experienced relatively benign consequences.

Although Plaintiff expresses concern about inconsistency in adjudication among these cases, there is no greater risk of it here than in any other case. Because every case has different judges, different facts, and different lawyers, the risk of inconsistent adjudications is inherent in litigation and in the judicial system. The information provided to the Court will guide the decision rendered, and it is not the job of the Court to provide evidence or legal theories where counsel has not provided them.

Because consolidation is inappropriate for the purpose of trial, it is also inappropriate for summary judgment. The consolidation rule is not a convenience rule—the cases are either one or they are not.

Therefore, the Court denies Plaintiff's motion to consolidate because Plaintiff has not met his burden of establishing commonality, and consolidation would be highly prejudicial to the defendants in these actions.

**CONCLUSION**

For the foregoing reasons, the Court denies both Plaintiff's motion to amend and Plaintiff's motion to consolidate.

**IT IS SO ORDERED.**

                                                   /s/
                                     **Hon. Vanessa L. Bryant**
                                     **United States District Judge**

**Dated this day in Hartford, Connecticut: March 4, 2022**